IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MASROOR SIDDIQUI,                §
                                 §
                Plaintiff,        §
                                 §  Civil Action No. 3:08-CV-2054-D
VS.                              §
                                 §
AUTOZONE WEST, INC., et al.,      §
                                 §
                Defendants.       §

MEMORANDUM OPINION
AND ORDER

In this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, alleging claims of race-based harassment, discrimination based on race, ethnicity, national origin, and religion, and retaliation, the court must decide whether a reasonable jury could find in favor of the plaintiff on any of his claims. Concluding that it could not except as to one component of his promotion-based claim, the court grants in part and denies in part defendants' motion for summary judgment.

I

This is a Title VII suit by plaintiff Masroor Siddiqui ("Siddiqui"), a Pakistani-American Muslim, against his former employer, AutoZone West, Inc. and AutoZone Texas, L.P. (collectively, "AutoZone").[1] Siddiqui became an AutoZone Store Manager in 1998 after AutoZone acquired Chief Auto, who then

_____

[1]AutoZone West, Inc. maintains that it is erroneously named as a defendant. As do defendants, the court will refer to both defendants collectively as "AutoZone."

employed Siddiqui.[2]   As a Store Manager, Siddiqui reported to various District Managers.   Soon after AutoZone became his employer, he was transferred to manage what he describes as a problem store.   After the terrorist attacks of September 11, 2001, Siddiqui became the subject of racial epithets.   During his tenure he was also subjected to other verbal abuse and was managed more closely than were other Store Managers.

Siddiqui was never promoted to the position of District Manager, although there were several openings during his tenure. After he did not receive a particular promotion, Siddiqui asked Ricky L. Koonsman ("Koonsman"), his Regional Manager,[3] why he was not promoted.   According to Siddiqui, Koonsman responded that he would never promote Siddiqui, that Siddiqui was wasting his time, and that Koonsman would "never promote people like you."   P. App. 13.

Sometime between February and April 2008, Siddiqui complained to Randy Mendolia ("Mendolia"), a Regional Training Manager whose duties included human resources and who was investigating an unrelated complaint, of the unfair treatment he was receiving from

---

[2]In recounting the factual background, the court summarizes the evidence in the light most favorable to Siddiqui as the summary judgment nonmovant and draws all reasonable inferences in his favor. *E.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[3]At AutoZone, District Managers report to Regional Managers.

- 2 -

Mike Stevens ("Stevens"), his District Manager at the time, and Koonsman, and he requested to be transferred to another region. In May 2008 an employee at Siddiqui's store informed Stevens that Siddiqui had removed a part from the store without paying for it, and had installed it in his car. Stevens informed the AutoZone Regional Loss Prevention Manager and later confronted Siddiqui, who then paid for the part. Following an investigation, AutoZone terminated Siddiqui's employment, purporting to act under its Zero Tolerance policy toward employee theft. Siddiqui maintains that AutoZone observed an informal policy that allowed employees to take parts from stores and pay for them later.

AutoZone moves for summary judgment dismissing all of Siddiqui's claims. Siddiqui opposes the motion.[4]

II

AutoZone moves for summary judgment on claims as to which Siddiqui will bear the burden of proof at trial. Because Siddiqui will have the burden of proof, AutoZone can meet its summary judgment obligation by pointing the court to the absence of evidence to support Siddiqui's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once AutoZone does so, Siddiqui must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v.*

---

[4]AutoZone also objects to parts of Siddiqui's summary judgment evidence. The court denies these objections as moot. *See infra* § VI.

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Siddiqui's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Siddiqui's failure to produce proof as to any essential element of a claim renders all other facts immaterial.   *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).   Summary judgment is mandatory if Siddiqui fails to meet this burden.   *Little*, 37 F.3d at 1076.

III

The court turns first to Siddiqui's racially hostile work environment claim (which he labels as a harassment claim).

A

As a threshold matter, the court addresses the basis for Siddiqui's claim.   In its motion, AutoZone contends that Siddiqui has no cause of action for racial harassment.   In his response, Siddiqui contends that AutoZone's motion "is limited to [his] claims for racial harassment, and fail[s] to address [his] claims of harassment based on national origin or religion."   P. Br. 2-3. Purporting to act "[i]n an abundance of caution," Siddiqui addresses in his response brief "his hostile work environment claims with regard to race, national origin, and religion."   *Id.* at 3.

It is understandable that AutoZone did not address Siddiqui's

- 4 -

claims of harassment based on national origin or religion: these claims are not pleaded in Siddiqui's complaint.  Although in the introduction to the complaint Siddiqui refers to "discrimination, harassment, and retaliation against Plaintiff based on his race and religion," Compl. ¶ 1, the harassment and discrimination claim is clearly limited to race, *see id.* at ¶ 31.[5]  Siddiqui alleges that he was not considered for promotions due to his race, ethnicity, national origin, and religion.  *See id.* at ¶ 32.  But his harassment claim rests on his race alone.[6]

A party is not entitled to defeat summary judgment based on claims that have not been asserted as of the time the opposing party has filed a summary judgment motion.  *See, e.g., El Sereno, LLC v. City of Garland*, 2010 WL 1741334, at *1 n.5 (N.D. Tex. Apr. 29, 2010) (Fitzwater, C.J.) (citing *Days Inn Worldwide, Inc. v. Sonia Invs.*, 2006 WL 3103912, at *20 (N.D. Tex. Nov. 2, 2006) (Fitzwater, J.)).  Accordingly, the court holds that Siddiqui's

---

[5]As evidence of his harassment claim, Siddiqui offers proof that Stevens referred to him as "Packi."  *See infra* § III.  This term refers to Siddiqui's national origin.  *See infra* note 13. Siddiqui did not include this allegation in his complaint, and did not thereby indicate that his harassment claim is based on national origin.

[6]There is a passage in Siddiqui's deposition in which AutoZone's attorney recognized that Siddiqui was complaining of harassment based on national origin, race, and religion.  *See* P. App. 17.  This does not alter the fact that Siddiqui's complaint is limited to harassment based only on race.

harassment cause of action is limited to a race-based claim.

B

To establish his claim of a racially hostile work environment, Siddiqui must prove, *inter alia*, that he was subject to unwelcome harassment, the harassment complained of was based on race, and the harassment complained of affected a term, condition, or privilege of employment. *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (addressing the five-element prima facie test). AutoZone points to the absence of evidence that Siddiqui suffered racial harassment that was severe or pervasive enough to create an objectively hostile or abusive work environment.[7]  Siddiqui responds that he was subjected to severe and pervasive harassment.

"Harassment is based on race if 'the complained-of conduct had a racial character or purpose.'"  *King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.)).  Siddiqui

---

[7]AutoZone also contends that it is entitled to summary judgment based on the affirmative defense made available under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  Siddiqui contends that the *Burlington-Faragher* defense is unavailable because he suffered a tangible employment action, that AutoZone does not meet the second requirement of the defense merely by providing an anti-harassment policy in a booklet, and that he sufficiently availed himself of corrective policies or opportunities.  The court need not reach these arguments because a reasonable jury could not find that Siddiqui experienced a racially hostile work environment.  In this circumstance, the *Burlington-Faragher* affirmative defense does not come into play.

must demonstrate a "connection between the allegedly harassing incidents and his protected status." *Id*. (alteration and internal quotation marks omitted).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22).  "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ramsey*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.  Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing . . . and conduct which a reasonable person in the plaintiff's

> position would find severely hostile or
> abusive.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).  Merely offensive conduct is not actionable.  *See Harris*, 510 U.S. at 21.

C

Viewed favorably to Siddiqui as the nonmovant, the evidence shows that, following the terrorist attacks of September 11, 2001, Siddiqui was subjected to insults by unnamed "people," "a few disgruntled employees," and one customer.  P. App. 17-18. According to Siddiqui, "people just talk and I took that as talk. Just talk.  They call me all kinds of names.  And I decided the best course of action is that to be quiet about it because it's a tough time for everybody."  *Id.* at 17.  Although "a few disgruntled employees" and a customer or "several customers" called him a "sand n----r," *id.* at 17-18,[8] and "people," including former AutoZone employees who worked for him, referred to him as "Sadam Sid" or "rag head," *id.* at 17-18, Siddiqui acknowledged that he is not complaining about this conduct, *id.* at 17 ("I don't have a complaint in that regards as far as people calling me sand n----r or calling me Saddam Sid or referring [to] me [as] rag head, and those sorts of name callings.").  Siddiqui did not complain to

---

[8]At one point in his deposition, Siddiqui attributed this statement to employees and customers.  Shortly thereafter, he testified that "[a]s far as I can remember, the sand n----r part, yes, it was customers."  P. App. 18.

AutoZone because he took this as something that was "happening throughout the country and it was not like just the one individual, it was just sort of like part of the things they [were] talking about." *Id.* at 18.[9]   There was also "general talk among managers and employees" about a response to the terrorist attacks, *id.*, but Siddiqui mostly thought of this as joking, *id.*

Siddiqui also relies on evidence that Stevens, his supervisor, regularly used "harsh language," *id.*, mimicked Siddiqui's accent, and referred to him as "tough Sid," *id.*   Siddiqui perceived this term to be derogatory because it assumed that, as someone of middle eastern descent, he was tough and mean.[10]   Stevens also referred to him "many times" as "Packi."   *Id.* at 20 and 124.

_____

[9]Siddiqui stated in his affidavit that he "tried to be the bigger person and just work through the harassment[.]"  P. App. 124.   The fact that Siddiqui did not view this conduct as subjectively offensive is corroborated by his deposition testimony:

> Again, I've been called so many different
> names I don't remember.  Because I did not ⸺
> like I said, did not make a big deal of it.  I
> just thought about it as a person who's making
> those types of comments that's their business
> or they need to be educated and I just didn't
> want to make a big deal out of it because I
> know how I felt after 9/11 and I know how the
> country felt about it.  For all of us it's
> been, I guess, [a] very tough time.  And I
> tried to keep my spirit and my morale up and
> to behave just like any other American because
> I'm American and I'm proud of what I am.

*Id.* at 20.

[10]Siddiqui also testified that Stevens used other words that he cannot remember.

- 9 -

As additional grounds for his hostile work environment claim, Siddiqui maintains that AutoZone assigned him to one of its most troubled stores (the Lewisville location), a high-volume store that was dirty and below standard; Stevens micro-managed Siddiqui (approving every hire, checking up on him every one or two hours, and constantly providing uncomfortable, threatening pressure) and did not provide him the same privileges as other Store Managers; and he was treated as an incompetent, inferior imbecile rather than a strong, competent manager.

D

The court concludes that a reasonable jury could not find that the conduct directed toward Siddiqui was sufficiently hostile or abusive to create a racially hostile work environment.

First, Siddiqui acknowledged that he did not consider some of the conduct——the statements by customers and subordinate employees——to be subjectively offensive, because it followed the terrorist attacks of September 11, 2001, and Siddiqui viewed these unfortunate comments in the context of the national tragedy that preceded them. *See, e.g., supra* note 9.  He also viewed some of the comments as joking.

Second, Siddiqui has not adduced evidence that would permit a reasonable jury to find that the customer and employee statements were frequent or pervasive.  While customer statements may be

sufficient to create a hostile work environment,[11] isolated statements are insufficient. *E.g., Mosley v. Marion Cnty, Miss.*, 111 Fed. Appx. 726, 728 (5th Cir. 2004) (per curiam) (holding that evidence of three incidents involving racial slurs was insufficient to support hostile work environment claim).  Siddiqui made the conclusory assertion in his affidavit that he was subjected to a hostile work environment "from 2001 until 2008," P. App. 124, but the statements about which he complains appear to have been concentrated within a period that followed shortly after the terrorist attacks of September 11, 2001.  In any event, Siddiqui's deposition testimony and affidavit are bereft of specifics about how frequently the customer and employee statements were made.

Third, concerning Stevens' use of unspecified harsh language, mimicking of Siddiqui's accent, and referring to him as "tough Sid" and "Packi," Siddiqui has offered few details.[12]  And even if, as

---

[11]An employer may be liable for a hostile workplace created by its customers.  *See Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 n.2 (11th Cir. 2003) ("An employer may be found liable for the harassing conduct of its customers if the employer fails to take immediate and appropriate corrective action in response to a hostile work environment of which the employer knew or reasonably should have known.").

[12]In his affidavit, for example, the two paragraphs devoted to his hostile work environment claim are conclusory and devoid even of the few details found in his deposition.  *See* P. App. 124, ¶¶ 5 and 6.  Conclusory assertions, such as that he was "constantly subjected to a hostile work environment," *id.* at ¶ 5, and that he "endured this abusive, hostile environment for seven years," *id.* at ¶ 6, are insufficient to create a genuine issue of material fact.

Siddiqui maintains, Stevens called him a "Packi," P. App. 20,
"simple teasing, offhand comments, and isolated incidents (unless
extremely serious) will not amount to discriminatory changes in the
terms and conditions of employment." *Faragher*, 524 U.S. at 788
(citation and internal quotation marks omitted).   Remarks
demonstrating a less severe degree of racial animus must be
pervasive to alter a term, condition, or privilege of employment.
*Lauderdale v. Tex. Dep't of Crim. Justice, Inst. Div.*, 512 F.3d
157, 163 (5th Cir. 2007).   The severity of harassing conduct that
a plaintiff must show varies inversely with the pervasiveness of
the conduct.   *Id.*   Siddiqui offers no description of the frequency
of the conduct, except to explain that it occurred "many times."
P. App. 20.   A reasonable jury could not find that the statements
on which Siddiqui relies created a hostile work environment.[13]

Fourth, as to the other conduct on which Siddiqui relies, he
has not adduced evidence that would permit a reasonable jury to
find that AutoZone or Stevens engaged in this conduct based on
Siddiqui's race.   Apart from his own subjective belief that it is
race-based, he has not produced evidence that is sufficient for a

---

[13]Additionally, the term "Packi" is not evidence of *race-based*
harassment; it refers, in the context of this case, to Siddiqui's
national origin as a Pakistani-American.   Discrimination based on
national origin "include[s] acts of discrimination undertaken
because an individual has the physical, cultural or linguistic
characteristics of a national origin group." *EEOC v. WC&M Enters.,
Inc.*, 496 F.3d 393, 401 (5th Cir. 2007) (describing reference to
plaintiff as "Arab" as referring to his national origin).

reasonable jury to find that he was assigned to the Lewisville store, micro-managed, subjected to uncomfortable and threatening pressure, deprived of the same privileges as other Store Managers, or treated as incompetent based on race, or that he was treated differently than other non-minority Store Managers. It is thus not evidence of race-based harassment. *See, e.g., Cavalier v. Clearlake Rehab. Hosp., Inc.,* 306 Fed. Appx. 104, 107 (5th Cir. 2009) (per curiam) ("Though [plaintiff] may believe that all twelve incidents were motivated by racial animus, subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment."); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995) ("[Plaintiff's] subjective belief that discriminatory intent motivated [complained of] actions is insufficient to establish a material question of fact regarding [defendant's] motives.").

Considering together all of the evidence on which Siddiqui relies, the court holds that Siddiqui has failed to present sufficient evidence to establish a genuine issue that the alleged acts of harassment were sufficiently severe or pervasive to alter the conditions of his employment or create an objectively abusive working environment. The court therefore grants summary judgment dismissing Siddiqui's race-based hostile work environment claim.

IV

AutoZone also moves for summary judgment dismissing Siddiqui's discrimination claim. Siddiqui alleges that AutoZone refused to transfer or promote him and ultimately terminated his employment based on his race, national origin, or religion. AutoZone points to the absence of evidence to support any of these claims, relying on evidence that each employment decision was made for a legitimate, nondiscriminatory reason.

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on his discrimination claim, Siddiqui must present either direct or circumstantial evidence that his race, ethnicity,[14] national origin, or religion was a motivating factor for AutoZone's adverse employment action. *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination).

_____

[14]Although Siddiqui states a claim for ethnicity-based discrimination, he does not distinguish it from his claim for race discrimination. The court will therefore consider the two together under the "race" rubric. *See, e.g., Burks v. Wisc. Dep't of Transp.*, 368 F.Supp.2d 914, 918 (W.D. Wis. 2005).

- 14 -

The court must decide as a threshold matter whether Siddiqui is relying on direct or circumstantial evidence since this affects the methodology by which the court must analyze the merits of AutoZone's motion and Siddiqui's discrimination claim.

Siddiqui maintains that he has produced direct evidence of AutoZone's discrimination.  He relies on racial epithets made by his supervisors, Stevens and Koonsman; racial epithets——the words "n----r," "Packi," "Saddam Sid," "Raghead," and "Sand N----r"——used by Stevens, Siddiqui's subordinates, and customers; and Koonsman's statements about his hiring preferences and standards, including these statements: "I'm never going to promote you," and "I would never promote people like you."  P. Br. 16 (citing P. App. 11).

The court holds that none of this evidence is direct evidence.  "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'"  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct."  *Sandstad*, 309 F.3d at 897-98.

Several of the statements on which Siddiqui relies were made by *customers*, not by someone at AutoZone who made the decision not to transfer or promote him or to terminate his employment.

Regarding Stevens, whom Siddiqui maintains used "harsh language," mimicked Siddiqui's accent, referred to him as "tough Sid," and referred to him many times as "Packi," the jury would be required to infer that because Stevens used such language and terms, the AutoZone decisionmaker acted with discriminatory animus.[15]  Siddiqui has failed to present any evidence, and the statements do not themselves show, that this conduct in any way related to a decision not to transfer or promote Siddiqui or to terminate his employment.  Therefore, it is at best circumstantial, not direct, evidence.  *See, e.g., Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 327 Fed. Appx. 472, 486-87 (5th Cir. 2009) (holding that epithets did not provide direct evidence of discrimination where witness "never allege[d] with sufficient particularity that any of those [committee] members used racial epithets in connection with the employment decision at issue, and none of the comments she discusses meet the [criteria of *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)]"); *Jones v. Overnight Transp. Co.*, 212 Fed. Appx. 268, 273 (5th Cir. 2006) (per curiam)

---

[15]Siddiqui has not produced evidence that Stevens made any of the complained-of decisions.  Although AutoZone can be held liable if Stevens influenced the decisionmaking process, *see, e.g., Young v. Harris Health Care, Inc.*, 226 F.3d 643, 2000 WL 1029180, at *2 n.15 (5th Cir. July 14, 2000) (rejecting argument that employer could not be liable for discrimination because biased employee had no authority over hiring decision, and concluding that biased employee influenced decisionmaking process), Siddiqui has not adduced evidence that would permit a reasonable jury to find this either.

("[Plaintiff] allegedly overheard [the supervisor who had fired him] state that he wanted to "get rid of all the blacks" and "fire a bunch of n-----s." . . . [The] comments . . . reveal a discriminatory motive on their face but lack the indicia of specificity and causation required to be direct evidence of race discrimination."). Siddiqui's contention that Stevens' bias proves AutoZone's discriminatory intent requires an inference or presumption and therefore is not direct evidence of discrimination.[16]

The statements attributed to Koonsman likewise do not qualify as direct evidence. According to Siddiqui, after he was passed over for a District Manager opening that Rex Mobley ("Mobley") received, he asked Koonsman why he was not being considered for the District Manager position and what he needed to do to get promoted. Koonsman responded: "I'm never going to promote you." P. App. 11. When Siddiqui asked him why, Koonsman replied: "I would never promote people like you." *Id.* When Koonsman said this, "his face turned completely different, a side [Siddiqui] ha[d] never see [in] him because he's known to be a very calm guy." *Id.* When Siddiqui persisted, Koonsman said: "You don't hear me what I said.  I will

---

[16]Additionally, the statements do not constitute direct evidence of discrimination because Siddiqui presents no proof that they were close in time to the employment events for which Siddiqui is suing. *See Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (holding that workplace comments must be proximate in time to plaintiff's termination to constitute direct evidence of discrimination).

never promote you.   I have better people to promote for that position than you. And you're wasting your time.  I will never —— and then he repeat[ed] it again." *Id.*  Koonsman's statements are not direct evidence of discrimination because one must infer that his reference to "people like you" means people of Siddiqui's race, national origin, or religion.   And the balance of what Koonsman supposedly said is indistinguishable from what a superior with absolutely no discriminatory animus could say to a subordinate whom he deemed unsuitable for promotion.

Nor is Siddiqui's description of Koonsman's hiring profile direct evidence.   According to Siddiqui, he was told

> that John Atwell [was] going to be the next
> district manager.  He was very favored of Mr.
> Rick Koonsman because even Greg Marshall told
> me that he fits the profile of what Rick
> Koonsman looks for.  And then I asked him what
> does that mean.   It means, white and blue
> eyes.  And at that time I did not think of any
> —— I just thought it was kind of funny.

P. App. 6.  First, this is not evidence of a statement attributed to Koonsman but of a statement by Greg Marshall ("Marshall") concerning Marshall's perception of what Koonsman looks for in a District Manager.[17]  Second, a jury would be required to infer that

---

[17]The testimony is also hearsay.   It is an extrajudicial statement of Marshall offered for the truth of the matter asserted: that Koonsman's profile is that he looks for white people with blue eyes.   Although the statement includes hearsay that is objectionable under Fed. R. Evid. 802, AutoZone did not object to it.  *See* Ds. Reply Br. 2-6.  It is therefore competent summary judgment evidence. *See Peaches Entm't Corp. v. Entm't Repertoire Assocs.*, 62 F.3d 690, 694 (5th Cir. 1995) ("Unobjected-to hearsay

if Koonsman looks for white people with blue eyes, that each employment decision in question was motivated by Koonsman's discriminatory animus based on Siddiqui's race, national origin, or religion. And third, it would be necessary for the jury to infer that Koonsman's supposed profile in a promotion context applied as well to AutoZone's decisions not to transfer or to terminate Siddiqui.

The court therefore holds that Siddiqui has failed to present direct evidence of discrimination.

B

Because Siddiqui has failed to produce direct evidence of discrimination, he must establish discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case). As modified, *McDonnell Douglas* consists of three stages. First, Siddiqui must establish a prima facie case of discrimination, which "creates a presumption that [AutoZone] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). Second, the burden shifts to AutoZone to articulate a legitimate, nondiscriminatory reason for the employment action taken against Siddiqui. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). AutoZone's burden is

---

may be considered by the trier of fact for such probative value as it may have." (quoting *Flores v. Estelle*, 513 F.2d 764, 766 (5th Cir. 1975))).

one of production, not proof, and involves no credibility
assessments. *See, e.g., West*, 330 F.3d at 385. Third, if AutoZone
meets its production burden, then Siddiqui may proceed under one of
two alternatives: the pretext alternative or the mixed-motives
alternative. *See Rachid*, 376 F.3d at 312. Under the pretext
alternative, Siddiqui must "offer sufficient evidence to create a
genuine issue of material fact . . . that [AutoZone's] reason is
not true, but is instead a pretext for discrimination." *Id.*
(internal quotation marks omitted). Under the mixed-motives
alternative, Siddiqui must offer sufficient evidence to create a
genuine issue of material fact "that [AutoZone's] reason, while
true, is only one of the reasons for its conduct, and another
motivating factor is [Siddiqui's] protected characteristic[.]" *Id.*
(internal quotation marks omitted).

AutoZone assumes *arguendo* that Siddiqui has established a
prima facie case.[18] It has produced evidence that it had
legitimate, nondiscriminatory reasons for each of its actions: it
terminated Siddiqui's employment because he removed property from
his store without paying for it; he was not promoted because he was
not the most qualified person for any of the District Manager
openings; and he was not transferred because two possible transfers

---

[18]AutoZone assumes that Siddiqui can make out a prima facie
case of "race and/or color discrimination." Ds. Br. 8. The court
assumes that he has made a prima facie showing for all grounds of
his Title VII discrimination claim.

would have required substantial pay cuts that Siddiqui was unwilling to accept, and Koonsman actually informed the Dallas Regional Manger of Siddiqui's interest in transferring to a store within the region, but Koonsman himself had no decisionmaking role regarding such transfers.

Because AutoZone has met its burden of production, Siddiqui must create a genuine and material fact under one of the alternative methods of proof. Siddiqui attempts to show that AutoZone's justifications are pretextual, and he makes no attempt to show that it acted with mixed motives. The court will therefore consider his arguments under the pretext alternative. *See, e.g., Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (holding that court would consider plaintiff's discrimination claim only under pretext alternative because plaintiff contended that defendant's stated justification for discharge was untrue and did not clearly contend that defendant had mixed motives), *appeal docketed*, No. 09-10183 (5th Cir. Feb. 17, 2009). To establish pretext, "a plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 580 n.2 (5th Cir. 2003).

C

Siddiqui's transfer-based claim is easily resolved against him. AutoZone has pointed to the absence of evidence that it failed to transfer Siddiqui based on his race, national origin, or religion. It has produced evidence of legitimate, nondiscriminatory reasons for not transferring him. In response, Siddiqui mentions his transfer-based claims only as part of a listing of his claims, P. Br. 17 (stating that he was "not transferred despite his requests"), and in a heading for one section of his brief, *id.* Siddiqui does not introduce evidence that would enable a reasonable jury to find that AutoZone's stated reasons for failing to transfer him are pretextual. The court therefore grants summary judgment dismissing this component of his discrimination claim.

D

The court turns next to Siddiqui's termination-based claim.

1

AutoZone has introduced evidence that Siddiqui was fired because he removed a part from his store and did not pay for it until Stevens confronted him.[19] AutoZone's evidence reflects that Gene Bohannon ("Bohannon"), the AutoZone Regional Loss Prevention

---

[19]"[W]hen a plaintiff has violated a company policy, the company may within broad limits deal with the employee free of judicial second guessing." *Porter v. Exxon Mobil Corp.*, 246 F.Supp.2d 615, 621 (S.D. Tex. 2003) (citing *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983)).

Manager, received a call from Stevens on or about the morning of May 6, 2008. According to Stevens, an employee who worked at Siddiqui's store had advised Stevens the night before that, on May 3, 2008, Siddiqui had removed a distributor from the store without paying for it and had installed it in his own car. Bohannon investigated and determined that Siddiqui transferred the part from another store to his store on April 25, 2008, removed the distributor from his store on May 3, 2008 without paying for it, and paid for it on May 6, 2008 only after Stevens questioned him about it. Bohannon then discussed his investigation with Koonsman, as Siddiqui's Regional Manager, and with Jeff Hill, the Divisional Loss Prevention Manager, and he sent the documents to AutoZoner Relations (AutoZone's human relations department) for review. Following its review, AutoZoner Relations recommended to Koonsman that Siddiqui's employment be terminated. Koonsman reviewed Bohannon's investigation and the store's video recording system, and he then terminated Siddiqui based on his violation of company policy against removing items from a store without first paying for them.

Siddiqui maintains that AutoZone actually deviated from an informal standard practice that permitted employees to remove parts from stores and pay for them after repairs were successful, and that this deviation is evidence of pretext. He posits that AutoZone's reliance on the Zero Tolerance policy is pretextual

because, in practice, it did not adhere to or commonly apply the policy under circumstances like Siddiqui's.  He asserts that he has raised a genuine issue of material fact that AutoZone had an unwritten practice and policy that permitted installing and trying out AutoZone parts before paying for them, and that the company deviated from this policy when it terminated him for doing what the unwritten policy in fact permitted.  Siddiqui argues that AutoZone cannot rely on a written policy that it did not commonly use or apply under the circumstances.

2

"A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated [his] employer's decision, such as through evidence of disparate treatment, or that [his employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citations and quotation marks omitted).  To create a genuine issue of material fact on the issue of pretext, Siddiqui must adduce evidence that would permit a reasonable jury to find that AutoZone gave "preferential treatment to another employee under 'nearly identical' circumstances." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)); *see*

*also Sandstad*, 309 F.3d at 901 (citing *Okoye*, 245 F.3d 507).[20]  "In discrimination cases, [the court] compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff." *Sandstad*, 309 F.3d at 901 (citing *Okoye*, 245 F.3d 507).  The circumstances are not "nearly identical" when the difference between the plaintiff's circumstances and the circumstances of those alleged to be similarly situated accounts for the difference in treatment received from the employer.  *See Wallace*, 271 F.3d at 221.  "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage is a stringent standard——employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Dotson v. Gulf*, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006)

---

[20]Even at the prima facie case stage, the plaintiff must show that other similarly-situated employees were treated more favorably.  *See Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based 42 U.S.C. § 1981 claims); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).  The "similarly situated" requirement has been strictly interpreted in this circuit to mean "nearly identical." *E.g., Ryburn v. Potter*, 155 Fed. Appx. 102, 107 (5th Cir. 2005) (per curiam) (quoting *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000)); *Torrez v. Milk Prods., L.P.*, 402 F.Supp.2d 773, 778 (W.D. Tex. 2005).  Therefore, even to establish a prima facie case, a Title VII plaintiff must show that others who engaged in "nearly identical" misconduct were not discharged.  *See, e.g., Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982)).

(citing *Okoye*, 245 F.3d at 514-15).

Siddiqui has not produced evidence that would enable a reasonable jury to find that AutoZone gave preferential treatment to another employee under nearly identical circumstances. The evidence that he cites in support of this claim is found in his affidavit, at pages 125 and 126 of his appendix. *See* P. Br. 19 (citing P. App. 125-26). Siddiqui's relevant affidavit testimony consists of the following:

> 10. There was a common, standard practice among Autozone employees regarding repairing your own car with Autozone parts. The standard practice was that you could install a part, or try it out, and if it resolved the problem, then pay for the part. This was not something specific to the Lewisville Autozone store; it was a common and accepted practice throughout the company.

> 11. In fact, when I had knowledge and proof that one of my employees was illegally using and sharing his employee discount, what is considered an instance of "shrink," the Autozone term referring to theft, Mike Stevens and Gene Bonahan [sic] did not have time to address the situation. It was not important to them to apply the purported "Zero Tolerance" shrink policy. Autozone selectively uses the term "Zero Tolerance" policy when it fits their needs, applying it unfairly.

> 12. Autozone used the "Zero Tolerance" policy to terminate me, alleging that I stole a part that I paid for. Again, just as I had been treated differently with regard to how I was managed, treated, and the opportunities that were available to me, I was also treated differently with the application of the purported "Zero Tolerance" policy.

P. App. 125-26.

Siddiqui's general and conclusory statements about AutoZone's practices do not address how company discipline was imposed under nearly identical circumstances, or in any specific instances. Moreover, he refers to "a common standard practice among Autozone employees," and to "a common and accepted practice throughout the company," but he does not specify that AutoZone tolerated violations of its anti-theft policies by *Store Managers*. *See Floyd v. Amite County Sch. Dist.*, 2008 WL 2954972, at *8 (S.D. Miss. July 29, 2008) (holding that high school principal did not present evidence of pretext by comparing his treatment to treatment of lower-ranking school employees). Similarly, his evidence is insufficient regarding shrinkage through misuse of an employee discount. There is no proof that a *Store Manager* who engaged in such conduct was not disciplined. And misusing an employee discount is different from removing a part and not paying for it until after the employee is confronted by a supervisor. Siddiqui's testimony that AutoZone treated him differently concerning the application of the "Zero Tolerance" policy provides no specific examples that would enable a reasonable jury to find that his termination occurred under nearly identical circumstances to another instance in which AutoZone did not fire a Store Manager. *See, e.g., Martin v. Waring Invs., Inc.*, 2008 WL 2312728, at *4 (S.D. Miss. May 30, 2008) ("[Plaintiff] has failed to produce any

evidence which suggests that the defendants [deviated from any] policy and/or practice . . . . Rather, the plaintiff merely makes the bare assertion that the defendants had and deviated from such a policy or practice."). Because he does not cite evidence of disparate treatment in nearly identical circumstances, he has failed to create a genuine issue of fact on the issue of pretext.[21]

The court therefore holds that a reasonable jury could not find that AutoZone terminated Siddiqui based on his race, national origin, or religion, and it grants summary judgment dismissing this component of his Title VII discrimination claim.

---

[21]Although Siddiqui does not rely on this evidence to oppose summary judgment in this respect, the court holds that he cannot rely on the statements of Stevens, Koonsman, other employees, or customers to show that AutoZone's reason for terminating him is pretextual. He does not specifically refute AutoZone's evidence that his conduct was brought to the attention of Bohannon, who conducted an investigation and informed AutoZoner Relations, and that AutoZoner Relations recommended that he be terminated. Therefore, even if the statements on which Siddiqui relies were made, a reasonable jury could not find on this basis that AutoZone's stated nondiscriminatory reason for discharging him is pretextual. *See, e.g., Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902-903 (5th Cir. 2000) (holding that mere scintilla of evidence of pretext does not create issue of material fact in all cases, that plaintiff must present sufficient evidence to find that employer's asserted justification was false, and that it is possible for plaintiff's evidence to permit tenuous inference of pretext and yet be insufficient to support reasonable inference of discrimination); *Read v. BT Alex. Brown, Inc.*, 2002 WL 22060, at *4 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.) ("Stray remarks are insufficient to enable a claim to survive summary judgment when a plaintiff fails to produce substantial evidence of pretext.") (citing *Auguster*, 249 F.3d at 404-05), *aff'd*, 72 Fed. Appx. 112 (5th Cir. 2003).

E

The court now turns to Siddiqui's promotion-based claim.

1

AutoZone has introduced evidence that it did not promote Siddiqui for the District Manager position in the Fort Worth region given to Mobley because the interview panel unanimously recommended Mobley as the best candidate.

It has presented evidence that Siddiqui did not receive the District Manager promotion given to Stevens because Siddiqui did not apply for that position, and Stevens was unanimously recommended for the position by an interview panel as the best candidate.  AutoZone also maintains that Koonsman was not a member of the panel that recommended Stevens.

Concerning persons whom Koonsman allegedly promoted to District Manager without going through AutoZone's standard interview process——Cliff Upchurch ("Upchurch") and "James" from Irving——AutoZone has adduced the following evidence: Upchurch was hired as a Regional Manager trainee by Dennis Tolliver ("Tolliver"), AutoZone's Vice President of Stores for the Southwest Division, and Upchurch held the title of District Manager. Tolliver was Koonsman's immediate supervisor.  Upchurch was initially assigned to the Dallas region reporting directly to Regional Manager Sam Sandoval ("Sandoval").  Upchurch was later transferred to Koonsman's region as a District Manager.  Koonsman

had no role in hiring Upchurch and was not involved in the decision to give Upchurch the title of District Manager.

AutoZone has also presented evidence from Koonsman that AutoZone is unaware of any Store Manager in Irving named "James."

In his response brief, Siddiqui relies on the conclusory assertion that "AutoZone cannot deny the fact issues related to their failure to promote Siddiqui." P. Br. 19. He contends that the pretextual nature of AutoZone's reasons for failing to promote him are demonstrated by its failure to promote A.J. Salkar ("Salkar"), an Indian-American, and by its changing the rules for promotions——i.e., Koonsman's secretly inviting certain white candidates to apply for District Manager positions——so that Siddiqui could not and would not be considered.

2

Most of Siddiqui's cited evidence would not enable a reasonable jury to find pretext in AutoZone's justifications for not promoting him. First, regarding AutoZone's treatment of Salkar, Siddiqui's citation to the record does not even relate to Salkar. *See* P. Br. 19 (citing P. App. 120). And the fact that AutoZone failed (if it did) to promote an Indian-American to the position of Store Manager does not alone indicate that the person's Indian-American status was in any respect a motivating factor for AutoZone's decision. If it were, the prima facie formulation would only need to consist of these two components: the person is a

member of a protected group, and the person suffered an adverse employment action.

Second, Siddiqui's evidence of Koonsman's practices for hiring District Managers is also insufficient.  Siddiqui maintains that AutoZone changed the rules for promotions so that he could not and would not be considered.  While Siddiqui cites the summary judgment record to support this assertion, *see* P. Br. 19 (citing P. App. 14, 15, 76, and 101-03), none of this evidence would enable a reasonable jury to find that AutoZone, including Koonsman specifically, made any policy changes or, if made, that the changes were implemented for the purpose of denying Siddiqui the promotions he sought based on his race, national origin, or religion.

Pages 14 and 15 of Siddiqui's appendix contain his testimony regarding his beliefs about AutoZone's standard company policy for filling District Manager positions and Koonsman's individual process.[22]  Regarding specific promotions that he did not receive, Siddiqui testified that, to the "[b]est of [his] knowledge," Koonsman made Upchurch a District Manager without going through a process of posting the position and interviewing candidates for the position.  But a reasonable jury could not find discrimination based on this evidence because it is essentially consistent with AutoZone's explanation: Tolliver, AutoZone's Vice President of

_____

[22]On the prior page (13), Siddiqui refers to the positions filled by Upchurch, "James," and "[a] few more" openings for which Siddiqui cannot remember the names.  P. App. 13.

- 31 -

Stores for the Southwest Division, and Koonsman's immediate supervisor, hired Upchurch as a Regional Manager trainee; Upchurch held the title of District Manager; Upchurch was initially assigned to the Dallas region reporting directly to the Regional Manager; Upchurch was later transferred to Koonsman's region as a District Manager; and Koonsman had no role in hiring Upchurch and was not involved in the decision to give Upchurch the title of District Manager.[23]   This explains why the position was not posted and candidates for the position (including Siddiqui) were not interviewed.

Regarding the promotion that Stevens received, Siddiqui testified that, so far as Siddiqui knew, Koonsman did not have a hiring process, he just promoted the people he liked; except for two occasions of which Siddiqui was aware, Koonsman did not implement a selection process, invite other candidates, or conduct interviews, he instead just picked someone for the position of District Manager; on one of those two occasions, Stevens received the promotion; and there have been several District Manager positions that Koonsman filled without letting the Store Managers or anybody know about them.  Siddiqui's testimony would not enable a reasonable jury to find that AutoZone's explanation——that Stevens was unanimously recommended for the position by the interview panel

_____

[23]And Siddiqui presents no evidence indicating that Tolliver selected Upchurch instead of Siddiqui based on Siddiqui's race.

as the best candidate and that Koonsman was not a member of the panel that recommended Stevens——is pretextual.  Siddiqui fails to point to any facts, other than his subjective belief, that AutoZone deviated from its normal hiring process.[24]

Concerning the promotion given to Mobley, Siddiqui testified that Koonsman invited Siddiqui to interview once, in 2000 or 2001, and that Mobley was given this promotion.  But Siddiqui offered no additional testimony regarding this promotion, and certainly none that would enable a jury to find that AutoZone's explanation——that the interview panel unanimously recommended Mobley as the best candidate——is pretextual.

Page 76 of Siddiqui's appendix contains part of Koonsman's deposition.  Koonsman denied telling Siddiqui that he would not promote a person like Siddiqui or saying anything that could be construed as saying that.  He also testified about Stevens' qualifications to receive the promotion to the District Manager position in the Fort Worth region.  Koonsman also explained how Store Managers are promoted from a regular store to a hub store, which is larger; that a lot of promotions to District Manager come from hub Store Managers; and that Stevens was a hub Store Manager when he was promoted to District Manager.  Siddiqui was not a hub

---

[24]The court concludes below, however, that there is additional evidence that is sufficient for Siddiqui to defeat summary judgment concerning the promotion that Stevens received.  *See infra* § IV(E)(3).

- 33 -

Store Manager and, as Koonsman recalled, had never been offered that position, probably because a hub store was not located near his home.  This evidence would not enable a reasonable jury to find in Siddiqui's favor on his promotion-based claim.

Finally, at pages 101-03 of his appendix, Siddiqui offers testimony from James M. Riley ("Riley"), AutoZone's Divisional Human Resources Manager.  Riley testified that when a District Manager position becomes open, the Regional Manager decides whom to interview and must approve the person's being considered.  Once the Regional Manager approves, the eligible candidates are interviewed by a panel that consists of regional staff: the Regional Manager, Regional Human Resources Manager, a Loss Prevention Manager, and one or two District Managers.  The candidates who pass the first panel proceed to the second, consisting of divisional staff and one or two Regional Managers.  That panel makes the decision by majority vote.  In 2008, Koonsman was the Regional Manager for Fort Worth and Sandoval was the Regional Manager for Dallas.  Riley was also asked to explain the procedure for applying for a District Manager position that was not posted.  The employee could be interviewed to determine a development process.  The candidate would then undertake a development process using an individual development plan to help him get to the next level or to be more successful in his current position.  Riley also testified that it is not possible to be promoted to the position of District Manager

without applying.[25]   This evidence alone would not enable a reasonable jury to find that AutoZone's stated reason for denying Siddiqui a specific promotion is pretextual.

3

To ensure that Siddiqui's position on summary judgment is fairly considered, the court has also examined the evidence and argument presented in the introduction portion of his brief. *See* P. Br. 1 (citing P. App. 11-12, and 44).  With one exception—a 2007 promotion that he says was given to Stevens—Siddiqui does not identify a specific promotion that was denied to him.  Instead, he maintains that "[t]ime and time again, from 2002 to 2007, [he] was passed over for District Manager positions." *Id.*

The difficulty with Siddiqui's general approach—that he was consistently denied District Manager promotions over a multi-year period—is that none of this evidence specifically addresses AutoZone's evidence of a legitimate, nondiscriminatory reason for which he did not receive a particular promotion.  If the court were to deny summary judgment, it is unclear from the record what particular promotion or promotions would be tried to the jury. *See* *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (affirming dismissal of failure-to-promote claim because plaintiff

---

[25]Riley also testified about termination policies and related matters in 2008.  This evidence does not alter the court's conclusion that Siddiqui cannot recover on his termination-based claim.

- 35 -

did not identify any specific job for which she applied).  The only specific promotions identified in the briefing are those involving Mobley, Stevens, Upchurch, and "James."[26]

The court concludes that the evidence is only sufficient to avoid summary judgment regarding the promotion that Stevens received in 2007.[27]  Viewing the evidence favorably to Siddiqui, he had a conversation with Koonsman after Mobley's promotion in which Koonsman told Siddiqui: "I'm never going to promote you," P. App. 11, "I would never promote people like you," and "You don't hear me what I said.  I will never promote you.  I have better people to promote for that position than you.  And you're wasting your time. I will never —— and then he repeat[ed] it again." *Id.*  According to Marshall, Koonsman's profile is white people with blue eyes.[28] A reasonable jury could infer that "people like you" means people of Siddiqui's race or national origin.

Statements may be used to demonstrate pretext where they

---

[26]Siddiqui identified three applications that he made for openings in the Dallas region.  But he also acknowledged that his complaint was not based on AutoZone's failure to select him for these openings.

[27]Summary judgment is appropriate regarding the openings filled by Mobley, Upchurch, and "James."  Concerning Mobley, in particular, the evidence is that he was promoted in 2000 or 2001. Even if Siddiqui's claim did not fail for other reasons, it would be time-barred.

[28]The court does not suggest that this evidence will be admissible at trial.  But it has not been objected to at the summary judgment stage and is admissible.  *See supra* note 17.

"first, demonstrate discriminatory animus and, second, [are] made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Laxton*, 333 F.3d at 583 (citing *Sandstad*, 309 F.3d at 899; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000)).[29]   According to Siddiqui, Stevens received the promotion without applying for it.  Koonsman did not have a hiring process; he just promoted the people he liked.  Riley, AutoZone's Divisional Human Resources Manager, testified that when a District Manager position opened, the Regional Manager decided whom to interview and was required to approve the person's being considered.  Once the Regional Manager approved, the eligible candidates were interviewed.  Koonsman was the Regional Manager for Fort Worth, Siddiqui's region, at the time in question.  A reasonable jury could therefore find that Koonsman prevented Siddiqui from being considered for the position that Stevens received.

AutoZone's explanation for promoting Stevens is that he was unanimously recommended for the position by the interview panel as the best candidate and that Koonsman was not a member of the panel

_____

[29]In *Laxton* the court noted that the Fifth Circuit, in the wake of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), no longer applies the four-part test articulated in *Brown*, 82 F.3d 651, to circumstantial evidence.  *See Laxton*, 333 F.3d at 583 n.4.  The *Brown* test still applies to the consideration of remarks as direct evidence.  *Id.*

that recommended Stevens.[30]   But a jury could still find this explanation to be pretextual if Koonsman (motivated by Siddiqui's protected status) prevented Siddiqui from ever being a candidate for the promotion.   Asked by Siddiqui why he was not being considered for open District Manager positions, Koonsman told Siddiqui that he would never promote him, and there is other evidence (including Marshall's statement) that Koonsman was motivated by Siddiqui's protected status.

Accordingly, the court holds that AutoZone is entitled to summary judgment dismissing Siddiqui's promotion-based discrimination claim except as to the claim that Siddiqui was not considered for the promotion that Stevens received.   As to that claim, AutoZone is entitled to summary judgment dismissing the religion-based claim, but is not entitled to summary judgment dismissing the claim to the extent it is based on Siddiqui's race or national origin.

V

Finally, the court considers Siddiqui's retaliation claim. Siddiqui maintains that AutoZone retaliated against him by terminating his employment after he complained to Mendolia, a Regional Training Manager whose duties included human resources, of

---

[30]Riley testified that the Regional Manager would typically sit on an initial panel that screened all applicants for District Manager positions and offered candidates to the panel that ultimately made the decision.

the unfair treatment he was receiving from Stevens and Koonsman. AutoZone points to the absence of evidence to support this claim, and it argues, as it did concerning Siddiqui's termination claim, that he was fired for violating company policy after he removed a part from his store without paying for it.

A

Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).  Siddiqui offers no direct evidence of retaliation, so he must proceed under the *McDonnell Douglas* burden shifting paradigm.  He must therefore demonstrate a prima facie case for retaliation by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.  *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).  As to the third element, the initial requirement that a plaintiff show a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find.  *Montemayor v. City of*

*San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Houston, Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If Siddiqui establishes a prima facie case, the burden shifts to AutoZone to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If AutoZone meets its production burden, Siddiqui must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the employer has produced evidence to rebut the employee's prima facie case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a prima facie case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4.

B

Siddiqui bases his retaliation claim on his termination. Assuming *arguendo* that he has established a prima facie case for retaliation, AutoZone has produced evidence of a legitimate, nondiscriminatory reason for firing him: he violated company policy by taking parts from his store without first paying for them. Siddiqui must therefore produce evidence that would enable a reasonable jury to find "but for" causation, i.e., that his termination was the result of his protected conduct——here, complaining to Mendolia about discrimination by Stevens and Koonsman.

Siddiqui has not met this burden. He relies in part on the same evidence that the court has concluded above is insufficient to raise a genuine issue of fact concerning his discriminatory termination claim. For similar reasons, the court holds that this evidence is also insufficient to enable a reasonable jury to find that AutoZone terminated Siddiqui for any reason other than his violation of the Zero Tolerance policy.

Siddiqui also relies on the temporal proximity——one to three months[31]——between when he complained to Mendolia and when AutoZone terminated his employment. He asserts that "[a]n employee can establish causation based solely on temporal proximity between the

---

[31]This range is based on the fact that Siddiqui believed he spoke to Mendolia between February and April 2008, and he was terminated in May 2008.

protected activity and the adverse employment action when the proximity is 'very close.'"  P. Br. 21.

Although "timing can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate," *Fabela v. Socorro Independent School District*, 329 F.3d 409, 418 n.9 (5th Cir. 2003)(alteration in original), evidence of temporal proximity between the protected act and the adverse employment action is alone insufficient to prove "but for" causation, *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Siddiqui's reliance on a complaint to Mendolia—who the evidence does not show ever relayed the information to a decisionmaker involved in terminating Siddiqui—is insufficient given the absence of any other evidence that would enable a reasonable jury to find retaliation based on his termination.[32]

The court therefore grants summary judgment dismissing Siddiqui's Title VII retaliation claim.

VI

The court denies as moot AutoZone's objection to Siddiqui's summary judgment evidence.  First, the court is granting AutoZone's motion for summary judgment as to the majority of the claims that

_____

[32]Nor has Siddiqui adduced evidence that Mendolia had a role in the decision to terminate him or had a discriminatory animus toward him.

are based on Siddiqui's contested evidence.   Second, AutoZone's second and third objections are addressed to statements by Siddiqui concerning his failure-to-promote claim.[33]   Although the court has determined that there is a genuine issue of material fact that precludes summary judgment concerning Siddiqui's race- and national origin-based promotion claim, it has not relied on the statements to which AutoZone objects.

*     *     *

Accordingly, for the reasons explained, the court grants AutoZone's January 5, 2010 motion for summary judgment except as to one component of Siddiqui's promotion-based claim.   The court overrules AutoZone's March 12, 2010 objections as moot.

**SO ORDERED.**

July 16, 2010.

_(signature)_

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[33]Siddiqui states: "[s]ince 2001, I have been passed up for the District Manager position several times due to my race (Pakistani-American Muslim) and the position was always given to a less qualified Caucasian employee," P. App. 124, and "I continued to apply for the District Manager positions when they would be posted internally, and I would continue to be denied," *id.*